IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN ILEEN WILFONG, )
)
    Plaintiff, )
)
-vs- ) Civil Action No. 17-1281
)
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF SOCIAL )
SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Plaintiff Susan Ileen Wilfong ("Wilfong") seeks judicial review of the Social Security Administration's denial of her claims for supplemental security income ("SSI"). Although she alleges a disability beginning on July 1, 2005, for purposes of this appeal the period of disability begins on August 29, 2012. (R. 17)[1] Following a May 2015 hearing, the ALJ denied Wilfong's claim. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 13 and 17. For the following reasons, Wilfong's motion is denied and the Defendant's motion is granted.

### **Opinion**

1. Standard of Review

---

[1] Wilfong has applied for benefits on at least four prior occasions. (R. 17) On each occasion her claim was denied. Because Wilfong did not file her present claim within two years of the July 2010 denial, the prior claims were not amendable to reopening and revising. As such, the issue before the ALJ in this case was whether Wilfong was disabled at any time since August 29, 2012. (R. 17)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)6 and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa.

1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. The ALJ's Decision

As stated above, the ALJ denied Wilfong's claim for benefits. More specifically, at step one of the five step analysis, the ALJ found that Wilfong had not engaged in substantial gainful activity since August 29, 2012. (R. 20) At step two, the ALJ concluded that Wilfong suffers from the following severe impairments: disc bulge and facet joint degeneration changes of the lumbar spine, causing mild central canal stenosis; mild degenerative osteoarthritis of sacroiliac joints, bilaterally, with impression of sciatica; question of fibromyalgia / myofascial pain syndrome, by report; hypertension; moderate-to-morbid obesity; borderline intellectual functioning; depressive disorder; generalized anxiety disorder; factitious disorder; and traits of cluster B / dependent personality disorder. (R. 20-21) At step three, the ALJ concluded that Wilfong does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-24) Between steps three and four, the ALJ found that Wilfong:

> has had at least the residual functional capacity to perform a range of work activity that: requires no more than a "light" level of physical exertion; requires no

climbing of ladders, ropes or scaffolds, and no more than occasional performance of other postural movements (i.e., balancing, climbing ramps or stairs, crawling, crouching, kneeling or stooping); entails no concentrated exposure to temperature extremes, wetness, humidity or environmental pollutants, and no exposure to hazards; affords a low stress environment such as involves no assembly/production line duties or type of pace, imposes no independent decision-making responsibilities and presents no more than minimal changes in daily routine is limited to "unskilled" duties that involve only routine and repetitive instructions / tasks; and requires no interaction with the public or more than occasional interaction with coworkers/supervisors.

(R. 24-25) At step four, the ALJ found that Wilfong is unable to perform her past relevant work. (R. 27) Ultimately, at the fifth step of the analysis, the ALJ concluded that Wilfong "has remained capable throughout the period at issue of making a successful adjustment to work that exists in significant numbers within the national economy." (R. 29)

III. Discussion

(a) Mental Impairments

Wilfong's demand for remand focuses, in part, on the allegation that the ALJ improperly rejected the opinion of the psychological consultant examiner. Specifically, Wilfong contends that the ALJ "played doctor in making his own determinations as to Plaintiff's mental limitations." *See* ECF Docket No. 14, p. 14. According to Wilfong, the ALJ "did not have a competent psychological opinion to contrast with Dr. Miller's." *Id.*, p. 13-14.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. § 416.927(c)(2)[2] To be entitled to

---
[2] Although the regulations governing the evaluation of medical evidence was recently amended, the version effective March 27, 2017 does not apply to the present case. *See* 20 C.F.R. §§ 416.927 (2017) and 416.920c (2017).

controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. *See Gargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. § 416.927. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting, Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(c)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). Although the ALJ may choose who to credit when faced with a conflict, [s]he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).

Here, Dr. John Laurence Miller, the psychological consultant examiner, opined that the results of his examination "appear to be consistent with psychiatric and cognitive problems, that may significantly interfere with the claimant's ability to function on a daily basis." (R. 2405) He noted that Wilfong's full scale IQ is 58, but cautioned that the results "appear to be an underestimation of her true level of intellectual functioning, both because of anxiety in the evaluation and because of a factitious disorder." (R. 2404) He also recommended psychiatric intervention and vocational training and

5

rehabilitation. (R. 2405) He found her prognosis to be "fair given that she receive treatment." (R. 2405) As part on his Medical Source Statement of Ability To Do Work-Related Activities (Mental), Miller described Wilfong as markedly impaired with respect to her ability to: understand, remember and carry out simple instructions; make judgments on simple work-related decisions; understand, remember and carry out complex instructions; and make judgments on complex work-related decisions. (R. 2407) He explained that her impairments stem from "memory problems in evaluation" and "borderline intellectual functioning." (R. 2407) Further, he found her markedly impaired with respect to her ability to interact with the public, but only mildly impaired in terms of her ability to respond appropriately to usual work situations and to changes in a routine work setting, and to interact appropriately with supervisors and co-workers. (R. 2408) Miller offered, as explanation for his conclusions, Wilfong's "cognitive weakness" and that she "appears to play 'sick role.'" (R. 2408)

I disagree with Wilfong's contention that the ALJ rejected Miller's opinion without sufficient explanation and / or without citing to any competent competing medical opinion.[3] The ALJ detailed Miller's findings and expressed that he "is entirely disinclined to accord any controlling or significant weight to any functional limitations indicated or ascribed by Dr. Miller following that single evaluation." (R. 27) The ALJ explained that Miller himself found the IQ results to be invalid, in part because of a factitious disorder. (R. 27) He also rejected the score as invalid, in that the claimant has worked as a cashier, obtained a driver's license, and has demonstrated ability to fill out application related documents in relatively informed, comprehensive, detailed and articulate

---

[3] Because I find that the ALJ relied upon medical assessments, I need not address her contention that the decision must be remanded per *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011).

6

fashion." (R. 27) He also noted that Miller's conclusions differed from those recorded by Dr. Tracy, another consulting evaluating psychologist. Tracy performed a disability evaluation and gave Wilfong a Global Assessment of Functioning ("GAF") of 54, which indicates "no more than 'moderate' psychological dysfunction. (R. 26-27)

The ALJ also discussed the findings proffered by state agency physician, Dr. Rings. Dr. Rings opined that Wilfong was not significantly limited with respect to understanding and memory, sustained concentration and persistence, except that she was moderately limited with respect to the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R.1196-97) Rings also found Wilfong did not have any significant limitations in social interaction or adaptations. (R. 1197) In explaining her findings, Rings observed that the "claimant can make simple decisions. She is able to carry out very short and simple instructions. She would not require special supervision in order to sustain a work routine. … There are no restrictions in regards to understanding and memory, social interaction and adaptation." (R. 1198) Rings added that "[t]he claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (R. 1198) The ALJ cited to Rings' assessment, noting that her findings "contraindicate the presence of any physical impairment(s) or mental illness(es) of persistent" severity. (R. 21)[4]

---

[4] The ALJ reached this conclusion in assessing whether Wilfong had any medically determinable impairments, whether considered individually or in combination, that satisfied the listing requirements at the third step of the analysis. (R. 21) Yet the ALJ makes clear that he considered Rings' assessment in fashioning the RFC and that he viewed her assessment in conjunction with those offered by Miller and Tracy. (R. 24) (stating that "The claimant's reports as of 2012 and 2013 are relatively benign as to her mental status. In ascribing more significant functional limitations than were found by Dr. Rings, the undersigned has particularly considered the consultative psychological reports that were completed in August 2013 by Scott Tracy, Ph.D. and (after the hearing) in October 2015 by Dr.

Consequently, I find that, contrary to Wilfong's suggestion, the ALJ articulated the reasons for assigning particular weight to an opinion. Further, those reasons are appropriate, valid and acceptable reasons for discounting opinion evidence. See 20 C.F.R. §§ 404.1527 and 416.927 (Evaluating Opinion Evidence). Therefore, I find no error in this regard on the part of the ALJ and remand is not warranted.

    (b) Physical Impairments

Wilfong offers another argument in support of remand: the ALJ failed to rely upon any medical opinion in fashioning her physical RFC. *See* ECF Docket No. 14, p. 17-21. I disagree. Dr. Ali completed an assessment regarding Wilfong's physical limitations. Dr. Ali's assessment indicates that Wilfong is able to lift and carry 10 pounds frequently and 20 pounds occasionally. (R. 1200) He also determined that Wilfong could sit for approximately six hours in an eight-hour workday. (R. 1200) Similarly, Ali adjudged Wilfong capable of standing / walking for about six hours in an eight-hour workday. (R. 1200) Further, Ali concluded that Wilfong had no manipulative, visual, or communicative limitations and that she had only occasional postural limitations, such as climbing, balancing, stooping, kneeling, crouching and crawling. (R. 1201-02) Ali did not ascribe any manipulative limitations. (R. 1201) Additionally, other than avoiding even moderate exposure to hazards, Wilfong had no environmental restrictions. (R. 1202) Ali also found that Wilfong participates in daily activities such as caring for herself; that Wilfong performs routine household activities; and that she relates "fairly well" to others. (R. 1205)

---

Miller (Exhibits 19F and 41F). Those reports, as well as other evidence bearing upon the claimant's work-related abilities, are discussed below in conjunction with the determination of her residual functional capacity.")

The ALJ evaluated, considered and cited to the opinion rendered by Dr. Ali. (R. 21) Indeed, the ALJ found that Dr. Ali's assessment "contraindicate(s) the presence of any physical impairment…." (R. 21) Admittedly, that portion of the decision which focuses upon the RFC does not explicitly reference Ali's assessment. Yet the ALJ represents that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927. Further, the ALJ's RFC finding tracks Ali's findings. Considering the ALJ's decision as a whole, it is clear that the ALJ relied upon Ali's opinion in formulating the physical portion of the RFC. In short, the ALJ's decision regarding Wilfong's physical limitations is supported by substantial evidence of record.

Consequently, I find that no remand is necessary.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN ILEEN WILFONG,)
    Plaintiff,)
)
  -vs-) Civil Action No. 17-1281
)
NANCY A. BERRYHILL,)
ACTING COMMISIONER OF SOCIAL)
SECURITY,)
)
    Defendant.)

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 7th day of March, 2019, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 13) is denied and Defendant's Motion for Summary Judgment (Docket No. 17) is granted.

                BY THE COURT:

                /s/ Donetta W. Ambrose
                Donetta W. Ambrose
                United States Senior District Judge